THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, *v.* KENNETH HOLMES, Petitioner-Appellant.

(No. 58229;

First District (5th Division)—January 11, 1974.

David E. Bennett and Brian J. Redding, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis, Thomas A. Mauet, and Daniel F. Murray, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

Kenneth Holmes, petitioner, appeals from the dismissal of his amended post-conviction petition. After a jury trial, he was found guilty of burglary and sentenced to a term of twelve to thirty years. In his original appeal (*People v. Holmes,* 127 Ill.App.2d 209, 262 N.E.2d 45), the conviction was affirmed but his sentence was modified to a term of not less than eight years, nor more than twenty years. After his petition for leave to appeal was denied (44 Ill.2d 587), he filed a *pro se* post-conviction petition. Appointed counsel then filed the instant amended petition.

The issues presented on appeal are whether: (1) he was deprived of his right to effective assistance of counsel; (2) he was denied his right to be present during every stage of his trial; (3) he was entitled to an evidentiary hearing as to how the State obtained a letter he had written to his mother; and (4) his sentence was inconsistent with the provisions of the Unified Code of Corrections.

During trial, the court, over objection, allowed the State to use a letter written by petitioner to his mother for the purpose of impeachment. Later, after the initial use of the letter by the prosecutor and before petitioner's redirect examination, the trial court, out of the jury's presence, inquired as to how the letter was obtained. The court stated

that the jury might believe "someone intercepted the letter sent by petitioner to his mother and brought it to court today." Assurances were given by the prosecutor that it was properly obtained and no further action was taken concerning the letter until after denial of petitioner's post-trial motion. At that point the trial court inquired of the attorneys, outside petitioner's presence, "as to how you [the prosecutor] got possession of the letter." The trial judge gave as his reason for this inquiry that the record should disclose this information for the benefit of any reviewing court. This hearing was very short, no testimony was taken, and nothing of any significance was said by either attorney other than the statement of petitioner's counsel that he knew how the letter was received and had talked to the source from whom the State had obtained it. No information was disclosed in this inquiry as to how the letter was obtained.

OPINION

I

Petitioner makes three allegations of violations of his constitutional rights; all emanating from the use of the letter at trial. First, he claims he was deprived of the effective assistance of counsel because (a) no objection was made at the hearing held outside his presence concerning the manner in which the letter was obtained, (b) no motion to suppress the use of the letter was made, and (c) no request was made for a proper hearing as to how it was obtained. Second, because the hearing was held outside his presence and without his knowledge, he was deprived of his right to be present during every stage of his trial. Finally, that the hearing held outside of his presence was an extra-judicial investigation of facts relevant to the trial which violated the requirements of due process.

■■ None of these allegations were raised on original appeal and it is the general rule that where issues might have been raised on appeal and were not, they are considered to have been waived. (*People v. Collins*, 39 Ill.2d 286, 235 N.E.2d 570.) This application of the law is relaxed only where fundamental fairness so dictates. (*People v. Weaver*, 45 Ill.2d 136, 256 N.E.2d 816.) Here, because petitioner was represented both at trial and on original appeal by attorneys from the office of the public defender, a substantial question may be raised as to whether certain trial 'deficiencies' should have been appealed, and, therefore, we deem it not inappropriate to consider petitioner's contentions. *People v. McNeil*, 53 Ill.2d 187, 290 N.E.2d 602.

■■■ Concerning the first of these allegations, petitioner refers us to *People v. Morris*, 3 Ill.2d 437, 447, 121 N.E.2d 810, where the Supreme Court stated:

"'As a general rule, a new trial may be granted where the in-

> competency of counsel is so great that accused is prejudiced and prevented from fairly presenting his defense, and a new trial sometimes is granted because of some serious error on the part of such attorney in the conduct of the case; and in this respect accused's application will be treated more favorably when the attorney is one appointed by the court than when the attorney is one selected by himself.  *  *  *' "

The basic requirements of due process are not changed in that, while a client is entitled to a fair trial, his attorney is not expected to be infallible. (*United States ex rel. Weber v. Ragen,* (7th Cir.) 176 F.2d 579.) It is only where such legal assistance amounts to no legal representation at all that the constitutional requirement of adequate representation will demand a reversal. *People v. De Simone,* 9 Ill.2d 522, 138 N.E.2d 556.

■■■ The guidelines provided in *People v. Morris, supra,* require that petitioner clearly establish (1) the actual incompetency of counsel, as reflected in the manner of carrying out his duties as his trial attorney, and (2) subsequent prejudice therefrom without which the outcome would probably have been different. Here, we note that petitioner's attorney did object to the use of the letter, however, it is evident that he did not move to suppress it and did not require a hearing as to how it was obtained because he was satisfied that it was lawfully received by the State. Under these circumstances, not having grounds to support a motion to suppress, he properly did not so move. Further, having talked to the source from which the State obtained the letter and having learned it was given voluntarily, there was no indication of incompetency because of his failure to ask for a hearing concerning the letter. Neither is his failure to object to the hearing held outside the petitioner's presence evidence of incompetency. This hearing occurred after the trial and after the post-trial motions had been denied and held, as stated by the trial judge, for the purpose of providing information for the reviewing court. Moreover, petitioner does not indicate how his presence could have added anything to this hearing.

The manner and scope of the trial counsel's examination of witnesses and his general conduct during the trial, indicate, in our opinion, that he was generally informed in the law and legal procedures. Further, we believe that the record not only fails to show incompetency of counsel but, even assuming it to exist, it fails to show any subsequent prejudice resulting as required by *People v. Morris, supra.*

## II

■■ Petitioner next contends that he had a right to be present at the hearing held outside of his presence and he correctly states the general

rule as enunciated in *People v. Allen,* 37 Ill.2d 167, 171, 226 N.E.2d 1, *cert. denied,* 389 U.S. 907, to be:

> "The law is clear that an accused has the right to appear and defend in person as well as by counsel; that he has a right to confront the witnesses against him, and that he is entitled to be present and to participate at every stage of the trial."

Petitioner also invites our attention to *People v. Woods,* 27 Ill.2d 393, 395, 189 N.E.2d 293, where the court stated:

> "'[I]n a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'"

It appears from the record that during trial the judge had expressed his concern over the fact that, although the attorneys agreed the letter was not illegally obtained, the jury might believe so. After denial of the post-trial motion, the trial judge called a hearing not to determine whether the letter was legally obtained but to reflect in the record the circumstances of its legal receipt. No testimony was taken at this hearing, nor were any facts disclosed concerning how the letter was obtained. The only relevant information disclosed was the statement of petitioner's counsel informing the court he was aware of and had talked to the source from which the letter was obtained.

In view thereof, we do not believe that petitioner's presence at the hearing would have had a relationship reasonably substantial to the fulness of his opportunity to defend against the charge under the rule as stated in *People v. Woods, supra.*

### III

Petitioner also alleges that the hearing outside of his presence constituted an impermissible extra-judicial investigation which deprived him of due process. He relies on *People v. Rivers,* 410 Ill. 410, 102 N.E.2d 303; *People v. McMiller,* 410 Ill. 338, 102 N.E.2d 128; *People v. Staples,* 105 Ill.App.2d 111, 245 N.E.2d 61; and *People v. Hummert,* 132 Ill.App.2d 340, 270 N.E.2d 496.

We believe these cases to be inapposite. In *People v. Rivers,* the trial judge made certain remarks indicating he had made a private investigation during a two month court recess, and the court held that a private investigation by the court, either during the trial of the cause or while the motion for a new trial is pending, constitutes a denial of due process. In *People v. McMiller,* the trial court made an outside investigation prior to sentencing. In *People v. Staples,* the trial court conducted a private investigation after the verdict was returned but before deciding defen-

dant's post-trial motion. In *People v. Hummert*, the judge made an independent investigation prior to his ruling on a post-trial motion.

Here, no investigation, as such, was conducted. The hearing was held in the trial judge's chambers, attended by the prosecutor and petitioner's counsel, and was conducted after sentencing and after the post-trial motion was denied. In addition, as we have heretofore stated, the hearing was not conducted to determine the legality of the receipt of the letter, since both attorneys had stated that it was legally obtained, but in order to allow the record to reflect the circumstances of its receipt for the information of a reviewing court. The court made no finding at this hearing and nothing was presented which was not already in the trial record. In view thereof, we do not agree with petitioner that the hearing amounted to an extra-judicial investigation in violation of defendant's right to due process of law.

## IV

Petitioner's next contention is that he was entitled to an evidentiary hearing as to how the State obtained the letter written to his mother. He argues that her affidavit establishes that the letter was obtained by coercion and subterfuge, in violation of his reasonable expectation that the letter would remain private unless voluntarily relinquished by his mother. (*Katz v. United States,* 389 U.S. 347, 19 L.Ed.2d 576, 88 S.Ct. 507.) The State argues that an evidentiary hearing under the Post-Conviction Act should only be granted upon a substantial showing of a violation of constitutional rights and that allegations which merely amount to conclusions are insufficient to require a post-conviction hearing. *People v. Knight,* 38 Ill.2d 373, 232 N.E.2d 292.

Here, the affidavit of petitioner's mother, submitted in support of his amended petition, stated in part:

"4. She never surrendered any mail from her son voluntarily. She did give a letter to the police officers and States Attorney who were handling her son's case. She gave this letter to them because she was coerced, intimidated and threatened by them.

5. The Police officers continually came to her house and threatend [*sic*] her with prosecution for perjury if she did not relinquish her son's letter.

6. Further the Police officers served a fraudently [*sic*] prepared and executed subpoena upon her requiring her to come to the Criminal Court House with the letter.

7. When she appeared at the Criminal Court House, she was greeted by the two Police officers and the States Attorney, and she relinquished the letter because of her fear of prosecution."

We note that the State, in support of its motion to dismiss petitioner's amended petition, attached the affidavit of the trial attorney of petitioner in which he states:

"(a) The prosecuting attorney told me that petitioner's mother had voluntarily relinquished the letter;

(b) I contacted petitioner's mother, inquired about the circumstances surrounding the surrender of the letter, and assured myself that petitioner's mother had voluntarily given the letter to law-enforcement officials.

(c) At the request of petitioner's mother, I did not tell petitioner the manner in which law-enforcement officials had obtained the letter."

In her affidavit, petitioner's mother claims that police officers served a "fraudently [*sic*] prepared and executed subpoena" upon her. This is a conclusion with no attendant facts alleged in the affidavit or elsewhere in the petition for relief to indicate the manner in which the subpoena was fraudulently prepared and executed. Furthermore, her allegations of coercion, intimidation and threats lack specificity in that no facts appear as to the date and place thereof, the nature of the coercion or threats, or the persons involved. In the absence of any supporting data, these allegations are mere conclusions and are insufficient to require an evidentiary hearing, *People v. Knight, supra.*

We note from our examination of the trial record, that the letter was properly used to impeach petitioner and at that time was believed by petitioner's counsel to have been voluntarily relinquished to the State. Therefore, any trial or post-trial hearing concerning the manner in which the letter was obtained was unnecessary and did not deprive petitioner of any substantial right.

## V

Petitioner's final contention is that his sentence is not consistent with the provisions of the Unified Code of Corrections. On original appeal the appellate court modified his sentence to a term of not less than eight years, nor more than twenty years. He now contends that his sentence should be further reduced and he correctly points out that the Unified Code characterizes the offense of burglary as a Class 2 felony and provides that the minimum sentence for this class should be no more than one-third of the maximum sentence.

■■ In *People v. Harvey,* 53 Ill.2d 585, 294 N.E.2d 269, the Supreme Court permitted defendants to avail themselves of the provisions of the Unified Code of Corrections where their direct appeals were not finally

adjudicated on the effective date of the Code. The rule in *Harvey* has not been extended to provide such relief in post-conviction cases. Here, because petitioner's original appeal had been finally adjudicated prior to the effective date of the statute, the Code is not applicable and his sentence will not be further reduced.

For the reasons stated, the judgment and sentence are affirmed

Affirmed.

DRUCKER and LORENZ, JJ., concur.