**UNITED STATES of America ex rel. Robert SHARP, Petitioner,**

v.

**Michael V. NEAL and Neil F. Hartigan, Respondents.**

**No. 88 C 7125.**

United States District Court, N.D. Illinois, E.D.

Aug. 1, 1989.

Adam Bourgeois, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen., State of Ill. by Michael J. Singer, Asst. Atty. Gen., Chicago, Ill., for respondents.

## ORDER

BUA, District Judge.

After pleading guilty to a drug offense in December 1985, petitioner received an extended prison sentence. Petitioner now asserts that he entered an involuntary plea of guilty. Based on this assertion, he petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In response to this petition, respondents contend that petitioner has waived the constitutional claims he now seeks to raise in federal court. For the reasons stated herein, the court dismisses petitioner's petition for a writ of habeas corpus.

## FACTS

On July 31, 1985, petitioner Robert Sharp appeared before Cook County Circuit Court Judge Michael Getty in order to plead guilty to five counts of narcotics possession. Before accepting Sharp's plea, Judge Getty informed Sharp of the maximum sentence the court could impose on him: consecutive prison terms of 30 years for a Class 1 felony and 14 years for each of three Class 2 offenses. After listening to the judge's admonishments, Sharp entered a guilty plea. Judge Getty then sentenced Sharp to five years probation. In addition, the judge ordered Sharp to spend the first two years of his probation in a drug treatment program. At the time of sentencing, Judge Getty warned that if Sharp violated his probation in any way, he could receive the sort of lengthy prison sentence that the judge had previously described.

On September 9, 1985, police arrested Sharp and charged him with possession of heroin with intent to deliver. At a hearing on December 9, 1985, Judge Getty warned Sharp that his latest offense carried a maximum sentence of 14 years in prison. In admonishing Sharp, however, the judge failed to indicate that a guilty plea could result in a sentence of consecutive prison terms and a mandatory supervised release term. Following the judge's admonishments, Sharp pled guilty to the September 1985 charge of heroin possession. Immediately thereafter, Judge Getty revoked Sharp's probation. The judge then sentenced Sharp to consecutive prison terms of 14 years for his latest crime and 6 years for his prior offenses. Sharp's sentence also included a mandatory supervised release term. Finally, Judge Getty advised Sharp that he had a right to appeal his conviction, but only if he filed a motion to vacate his plea within 30 days. The judge further warned Sharp that a motion to vacate the plea should raise all issues that might be asserted on appeal, since any issues not raised would be waived.

Sharp filed a timely motion to withdraw his guilty plea. He based this motion solely on the contention that he should not have received an extended prison sentence for the crime he committed in September 1985. The trial court denied Sharp's motion to withdraw his plea.

Sharp then appealed to the Illinois Appellate Court. In addition to challenging the length of his sentence for the September 1985 offense, Sharp's appeal raised two new issues. For the first time, Sharp asserted that he had not entered a voluntary plea in December 1985 because Judge Getty had not admonished him about the prospect of consecutive sentences or the mandatory supervised release term. The Appellate Court found that Sharp had waived the issues pertaining to the voluntariness of his plea. The Appellate Court also concluded that the trial court's admonishment of Sharp and acceptance of his plea did not constitute plain error under Illinois law. Finally, the Appellate Court ruled that Judge Getty did not abuse his discretion when he sentenced Sharp to 14 years in prison for the September 1985 drug offense. Based on these findings, the Appellate Court affirmed the trial court's denial of Sharp's motion to withdraw his plea.

Following his unsuccessful appeal, Sharp petitioned the Illinois Supreme Court for

leave to appeal. On April 7, 1988, the Supreme Court denied Sharp's petition. At that point, having exhausted his remedies in state court, Sharp filed a petition for a writ of habeas corpus in federal court. He named Warden Michael Neal of the Danville Correctional Center and Illinois Attorney General Neil Hartigan as respondents.

## DISCUSSION

■ Sharp's habeas corpus petition raises two due process claims. First, Sharp contends that he did not knowingly and voluntarily plead guilty because the trial court failed to admonish him that any prison sentence he might receive would include an additional mandatory supervised release term pursuant to Ill.Rev.Stat. ch. 38, para. 1005–8–1(d) (1987). Second, Sharp asserts that the trial court's failure to admonish him about the possibility of consecutive prison sentences rendered his plea involuntary. In their answer to Sharp's petition, respondents argue that Sharp did not properly raise his due process claims in state court. For the purpose of habeas review, a petitioner's failure to comply with state procedural rules constitutes a procedural default unless the petitioner can show cause and prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Therefore, before considering the merits of Sharp's petition, this court must determine whether Sharp has waived his due process claims by failing to assert them properly in state court.

■ Under Illinois Supreme Court Rule 604(d), a defendant cannot appeal from a judgment entered upon a plea of guilty unless the defendant files a timely motion to withdraw his plea. Ill.Rev.Stat. ch. 110A, para. 604(d) (1987). If the trial court denies the defendant's motion to withdraw his plea, the defendant may appeal; but "[u]pon appeal any issue not raised by the defendant in the motion to withdraw the plea of guilty and vacate the judgment shall be deemed waived." *Id.* Judge Getty explained these procedural requirements to Sharp at the December 1985 sentencing hearing. Consequently, Sharp knew that he could preserve issues for appeal only by

raising those issues in a motion to withdraw his plea. Aware of the prospect of waiver under Rule 604(d), Sharp failed to assert any due process claims when he moved to withdraw his plea. Based on a straightforward interpretation of Rule 604(d), this court must agree with the Illinois Appellate Court's conclusion that Sharp has waived his constitutional claims.

Sharp argues that the law of waiver should not apply to his case. He points out that the Illinois courts have recognized an exception to the waiver doctrine in certain cases where a guilty plea followed an allegedly defective admonishment. *See, e.g., People v. Weakley*, 45 Ill.2d 549, 259 N.E.2d 802 (1970); *People v. Evans*, 37 Ill.2d 27, 224 N.E.2d 778 (1967); *People v. Kull*, 171 Ill.App.3d 496, 121 Ill.Dec. 916, 525 N.E.2d 1223 (1988). Sharp's case, however, does not fall within this judicially created exception to waiver. When it originally established this exception, the Illinois Supreme Court was responding to an argument by the State that a defendant waived all claims by pleading guilty. The Supreme Court reasoned that a defendant's guilty plea should not preclude a subsequent appeal based on an alleged defect in the trial court's admonishment: "For if ... the admonishment by the trial court was improper, the law of waiver would be inapplicable since defendant could not have 'knowingly' and 'intelligently' waived his constitutional rights." *Evans*, 37 Ill.2d at 32, 224 N.E.2d at 781. Unlike the State in *Evans*, respondents in the instant case do not maintain that Sharp waived his due process claims when he pled guilty. Rather, respondents assert that Sharp waived his constitutional claims by failing to raise them in a motion to withdraw his plea. Due to this distinction, *Evans* does not shield Sharp from the operation of the waiver doctrine. Although Sharp could not have perceived a problem with the trial court's admonishments before he pled guilty, he certainly became aware of a potential due process violation long before he moved to withdraw his plea. In fact, moments after accepting Sharp's plea in December 1985, Judge Getty sentenced Sharp to consecutive prison terms and a mandatory supervised release term. Thus, when he left the courtroom at the

conclusion of his plea hearing, Sharp knew that the trial court had failed to admonish him about certain features of the sentence he had received. Sharp also knew that if he wished to assert any claims on appeal, he would first have to raise those claims in a motion to vacate his plea. Fully aware of both the inadequacy of the admonishments and the law of waiver, Sharp knowingly and intelligently waived his due process claims by failing to raise them when he moved to withdraw his plea.[1]

█ Having waived his constitutional claims in state court, Sharp cannot raise such claims in a habeas petition unless he makes a sufficient showing of cause and prejudice. *See Wainwright*, 433 U.S. at 87, 97 S.Ct. at 2506; *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 800 (7th Cir.1987). Sharp has not even attempted to show good cause for his failure to raise any due process claims in his motion to withdraw his plea. Therefore, due to Sharp's procedural default, this court lacks jurisdiction over his petition for habeas relief.

### CONCLUSION

For the foregoing reasons, this court dismisses Sharp's petition for a writ of habeas corpus.

IT IS SO ORDERED.

---

1. As Sharp points out, two Illinois courts recently held that the law of waiver did not apply to a defendant who had failed to challenge a defective admonishment when he moved to withdraw his plea. *See People v. Kull*, 171 Ill.App.3d 496, 121 Ill.Dec. 916, 525 N.E.2d 1223 (1988); *People v. Sutherland*, 128 Ill.App.3d 415, 83 Ill.Dec. 790, 470 N.E.2d 1210 (1984). These cases seem to suggest that a defendant who has pled guilty can never waive a claim pertaining to an improper admonishment of the consequences of a guilty plea. In this court's view, such a sweeping extension of the *Evans* exception ignores the rationale underlying the *Evans* decision. That rationale does not justify the creation of a blanket exception to waiver whenever a defendant claims he received a defective admonishment. In carving out an exception to waiver, the *Evans* court simply observed that a defendant does not have sufficient information at the time of his guilty plea to make a knowing and intelligent waiver of a claim concerning the trial court's admonishments. Perhaps under certain factual circumstances, through no fault of his own, a defendant might remain uninformed about a potential defect in the admonishments even after he has pled guilty. If this lack of information prevented a defendant from asserting a due process claim in a motion to withdraw his plea, then the *Evans* exception would apply. In many cases, however, a defendant learns of a flaw in the admonishments between the time he pleads guilty and the time he moves to vacate his plea. In the instant case, for instance, Sharp knew of two defects in the admonishments several weeks before he moved to withdraw his plea. When he failed to raise any due process claims in his motion to withdraw his plea, Sharp possessed enough information to make a knowing and intelligent waiver. Consequently, the *Evans* exception does not apply to Sharp's case.